Good morning. Anthony Bornstein of the Federal Public Defender Office on behalf of the petitioner, Mr. George Diegner. Your Honors, in this federal habeas corpus case, the prosecutor's misrepresentations regarding the victim's status for trial, even if implicit and inadvertent, lulled him into inaction with respect to this particular due process claim. I take it you were not the lawyer who slept through this situation. I first came on board and appointed after Mr. Diegner's. After all the damage was done, yeah. That's right. I wanted to make sure. That's exactly correct, Your Honor. Appointed only in the federal proceedings in the district court and then now on. And he didn't base his claim for habeas on inadequate or ineffective assistance of counsel, but he had a poster boy for an ineffective attorney. That's right, Your Honor. And unfortunately, we did not have a basis to excuse the delay with respect to the ineffectiveness claims. And that's why we're confining the lawsuit, the habeas corpus action, to the due process misrepresentation claim. I think to fully appreciate our position and our argument requires an examination of the case from Mr. Diegner's position at the time of the plea negotiation process. As the lawyer, defense lawyer, recounts in his affidavit, particularly in ER 98 and then at ER 104 to 105, this case was gearing up for trial. The lawyer then describes how there was a settlement conference that was lengthy and a dynamic process in which Mr. Diegner was actually present in the courtroom and actually made a chamber's appearance before the trial judge, Judge Julie Franz. Is there anything in the record that indicates that the prosecuting attorney knew that the one of the witnesses had died? We don't know what the prosecutor knew at the time. That's one of the reasons that we requested an evidentiary hearing and that our alternative request to this Court is that we have a remand for a Federal evidentiary hearing to explore these very issues. I believe that the fact-finding by the magistrate judge in that regard was really highly imperfect. The magistrate judge credited a statement from the prosecutor made on paper years after the fact and in furtherance of this litigation. It was a statement by an actor whose very conduct is challenged as unconstitutional and forms the basis for the habeas corpus claim here. If the prosecutor didn't know, then it's just kind of routine, inadequate preparation by a prosecutor. If she did know, then it was a fraud on the court. So it makes a lot of difference. And we don't know what the ultimate facts will be. And there's two, really two separate inquiries. One is the threshold inquiry regarding the statute of limitations and on whether the different triggering date should apply here. And then separately, depending on the resolution of that case, will ultimately be the merits. So spell out for me what the – how things would have worked out differently had he known that Tara Evans had died before the guilty plea. Well, again, the case was gearing up for trial. The settlement negotiation was lengthy. The defense lawyer at ER98 says attempts to resolve the case were proving difficult. So there was this comprehensive or global, if you will, settlement conference that addressed all of the charges. Mr. – excuse me – representations were being made to Mr. Degner during this process. They obviously concerned the strength of the State's case. He ultimately accepted a very stiff prison sentence that collectively – Yeah. There was two complainants. And really, except for certain items of physical evidence pertaining to the items found in Mr. Degner's car, the key evidence in the case was – would be that of – from the testimony of the two witnesses, Ms. Gerson and Ms. Evans. That would be absolutely critical to the State. So if Ms. Evans couldn't testify, then you're saying he – I mean, it would be less likely – much less likely he would have been convicted on – I'm sorry, Your Honor? If she wasn't there to testify, you're saying it would have been much less likely that he would have been convicted of her assault? It's likely that they would be – have far less – far less evidence and the strength of the case would be seriously diminished without her actual presence in court to give evidence on the State's behalf. They would be largely limited to the evidence pertaining to Ms. Gerson. And so the ultimate negotiation likely would have been very different and the outcome of a trial would have likely been very different as well. Well, weren't they both together? They're two separate incidents. Two separate incidents. Yes. And they were joined – Oregon has liberal joinder policy in criminal – with respect to criminal charges, and the two separate cases were joined for trial. And just one other point regarding the fact-finding process below. The prosecutor's statement in the affidavit also has a disconnect between the statements that were made at – in open court that the witnesses were kept apprised of the proceeding, and then there's sort of a backtrack in the affidavit submitted to the district court below that, well, witnesses are generally kept apprised either by telephone or mail. And so that's another reason an evidentiary hearing should be granted here is so that we can really cross-examine and explore the extent of the knowledge on the State's part. Well, how did – how and when did Mr. Degner become aware that Ms. Evans had died six weeks before the plea agreement was entered? We first learned of it during the investigation of this Federal habeas proceeding at the district court level. And we – you had an investigator who – Yes, Your Honor. So it wasn't until the Federal proceedings? It was just in this Federal proceeding. So it was not known. And how was it – how did you learn of it? As I recall, just starting out with Internet investigation and then, you know, following up with the investigation, followed by telephone calls and requests for further information and documentation. And just lastly, regarding the prosecutor's statement, it's a – it's a self-insulating statement. If the prosecutor says, well, I didn't know this, and that's the end of the inquiry, there's really an ability to find out exactly what statements were made in chambers and prior to the actual entry of the plea. The State has argued below and argued in – at the appellate level in their answering brief that, well, this in-court statement was, you know, after the fact. It was after he actually entered the plea. What authority have you for the suspension of or getting away from the statute of limitations? If the lawyer had been on the job, the lawyer would have found out whatever the facts were, and this wouldn't be here. It wouldn't be the same case in any – in any manner. It would be a completely different situation. So 500 days go by before Mr. Gagner discovers that he's been hacked by the system. Well, the thrust of our argument is that through the State's misrepresentations, whether they were inadvertent at some level and whether they are – whether or not they are implicit. Do you have any authority that an innocent mistake like that will toll the statute of limitations under the AEDPA? Not under the AEDPA, but we've cited cases toward the end of our opening brief regarding other Federal statutes of limitations in other types of litigation and civil litigation. And we submit that there would be no reason to invoke a different rule for purposes of the AEDPA than exists in other interpretations of Federal statutes of limitations. If Your Honors will, I would save my remaining time, however short, for rebuttal. Good morning. May it please the Court. Michael Casper from the Oregon Department of Justice on behalf of the APLE. The District Court properly dismissed the writ in this case as untimely because it was filed more than a year after the conviction became final and because statutory tolling does not apply here and neither does equitable tolling. In both cases, the burden is on the petitioner to show that he acted with diligence. And I think in response to the Court's questions just now, we learned that counsel, once he became involved in this case, was able to determine through Internet research that this victim was dead. And there's no showing whatever as to why that couldn't have been discovered earlier. And I think maybe analytically it's helpful to think of this case, how it would have been different if there was no just erase the Court's questions, have the victims been apprised, and imagine what would have happened here. So in other words, there's no misrepresentation or alleged misrepresentation at all. Under those circumstances, if several years down the line, 500 days later, a petitioner comes and says, well, I didn't know she was dead, I think it's pretty clear that we would say, well, the factual predicate of your claim is something that you could have discovered with due diligence. The only thing that changes this case at all, if it does at all, is the fact that at the plea hearing, after the plea was already entered, the prosecutor said in response to the Court's questions, have the victims been apprised of the proceedings? Yes. There's factual findings in this case that that, based on the prosecutor's affidavit, that she was making that statement in good faith. So it really does become a question of whether a good faith mistake on the part of the prosecutor after the plea is entered is something that would toll the statute of limitations. And there's no authority for the proposition that that's the case. In cases involving equitable tolling, the Court, it's rarely invoked, and it requires the petitioner to show diligence and that there were extraordinary circumstances outside of his control that prevented him from filing on time. And in this case, the petitioner is not able to show either of those things. With respect to diligence, as already noted, over 500 days went by, and in fact he had already missed the deadline for the habeas petition by the time he went to state PCR. He gets to state PCR, post-conviction relief in Oregon, and even at that, in that proceeding, he's asked, he says explicitly, I'm not contesting that victim. I'm not contesting that case. I did that. So even throughout the PCR hearing, he's still not, he's showing no diligence whatever. It's not until 2007 that this is discovered through Internet research, but there's no showing at all as to why that couldn't have been discovered earlier. And yet it's petitioner's burden to show that he was acting diligently. That burden wasn't met here. Well, normally you'd accept the word of the prosecutor that the person had been notified, that the victim had been notified. You wouldn't, you'd accept it. Why would you challenge it? And then it just comes up. So five years later, whatever the period was, not five years, but 500 days later, that there's an investigation conducted, and the Federal Defender's Office finds out that the victim was dead at the time the client entered a guilty plea. And doesn't the government have some obligation to keep track of its witnesses, particularly when you have a witness who's a victim? Well, I think that the government probably does have some responsibility for keeping track of its witnesses, but so does a defense attorney. And there's certainly no authority for the notion that the government is responsible for, you know, calling every day to make sure the victim's still alive and then apprising defense counsel, yet we're still good to go here. The part that I find troubling is that the plea negotiations were predicated on the assumption that both witnesses were alive and well and going to testify. Presumably they were, although there's no, the allegation is. It would have to have been, right? Right. I think we'd have to concede that that was probably what everybody believed during those plea negotiations, although the allegation here is with respect to a misrepresentation that occurred at the plea hearing, and that was what, according to the. . . That's right. And I think that my only point with respect to that was that there's no authority for the notion that a good-faith misrepresentation, if you will, that on the part of the prosecutor at a plea hearing is a kind of extraordinary circumstance. I mean, if you look at the extraordinary circumstances that will allow for equitable tolling in other cases, it's really extreme misconduct on the part of the prosecutor and on the part of an attorney. And that's not what this is. And but if I could step back, I'm a little uncomfortable. Was there a hearing on this good-faith issue? There was not a hearing. There was an affidavit. There was the allegation that it was basically a lie, that it was misrepresentation. There was an affidavit then supplied by the State that in fact the prosecutor didn't know, and there was nothing to dispute that. I think that this case might be on a somewhat different footing if Petitioner had at that point come forward with an affidavit saying, well, actually, she said during plea negotiations X, or something to create a question of fact. But there really wasn't one, and so no need for a hearing, because on the posture that this was in, you had had an allegation that there was a misrepresentation at the plea hearing, an affidavit saying I didn't know, and a court finding that in fact she didn't know. There's no basis at this point for having a hearing because there's no factual collision going on anymore. But why would Digner or his counsel, you know, the case which requires a triggering event, what would have triggered them to be on notice that they should be looking into whether or not Ms. Evans was dead or alive? I mean, I just don't. Is it really a regular practice of defense counsel to keep checking on the government and the victims, whether they're dead or alive, all the way up to trial? And especially when they're negotiating with you and preparing for trial and the government saying, you know, we're going to convict you of these two counts, so you better plea to this lesser punishment? I don't know that it's practice to be continually checking to see whether a witness is dead or alive on the part of either the defendant or the State. I mean, I think that, you know, 199 times out of 1,000, everyone, this is the case and this is the case. And, yeah, I mean, she could have died the morning of the hearing, or she could have died the morning after the hearing. I mean, that's possible. And these things happen. And I don't think that there's any doubt that if that had happened that way, that we would be sitting here talking about the petitioner being misled. But I guess to more fully answer your question, I think that there is a diligence requirement on the part of a defense lawyer to maybe not check to see if everyone's alive, but to see what's the strength of the State's case? What witnesses do they have available? And this witness was apparently unavailable because dead starting in January, and it's now March. Right. But isn't it when the court asks have the witnesses been apprised or been kept apprised, isn't that a question that's saying are they available? It's really asking are they going to be here to testify? No, I don't think so. I mean, I think the specific findings of the magistrate were that that was not what was intended, and I understand that. How would the magistrate know? I mean, it would seem to me, why ask the question if it didn't imply that they'd be available? Why inform them of the proceeding unless you're informing them of the proceedings so that they'll be there? Well, I think at that point it was about should we go to sentencing? And do the victims want to be involved here for the sentencing proceeding? I don't think it was victims are alive, they would have been able to testify, right? I mean, I think the question at that point actually had nothing to do with whether the victims had been, in fact, available for trial. It's an inference that, you know, the fact that they were supposedly kept apprised that they were therefore alive and therefore available. Right. And I mean, I understand that that inference is available, but I don't think that that's what the representation. Is there a pre-sentence report here? That I am not aware of. I can look into that and get back to the Court. Well, it's kind of important to know if there was a pre-sentence report, then presumably the probation officer would try to contact the victim and get a statement from the victim. That's true. I hadn't thought of that. Huh? That had not occurred to me, but that is true. Well, was one prepared? I assume that there was a pre-sentence report prepared, but I haven't seen it. Does Oregon have a pre-sentence process for state court criminal cases? Yes. Yes. And does Oregon allow discovery, interviewing, and depositions of witnesses pre-trial? You know, I'm embarrassed to say that this is getting a little bit out of my realm of expertise. I don't know enough to answer you intelligently. State court criminal defense. Yeah. I see my red light is long since on, so unless the Court has anything else. All right. Good level. Just in response to Your Honor's final question, there was no opportunity for depositions. Oregon discovery law does not authorize or have any provision for such depositions. They also skipped the pre-sentence investigation process in this case because as part of this large plea negotiation settlement conference, the case went right to sentencing that very day. And just one point in rebuttal. There was no pre-sentence report. Right. Just went right to sentencing that day. And just in response to the State's contention that there was good faith here, I think there are certain assumptions that are being made that we just don't know the actual facts to support them. And that's why we are asking for remand for an evidentiary hearing as our alternative request to explore those very facts. Thank you, Your Honors. Thank you. This matter will stand submitted. And in the next case, Amiette v. Providence Health. That's submitted on the brief. We come to Owens v. Lumber Products.
judges: Goodwin, Pregerson, Wardlaw